HARDY, Judge.
Plaintiff instituted this suit for damages resulting from the alleged illegal repossession of an automobile by the defendants, Andress-Hanna, Inc., plaintiff’s vendor, and Universal C. I. T. Credit Corporation, the holder and owner, in due course, of plaintiff’s note for the credit portion of the purchase price of the automobile. After trial there was judgment in favor of plaintiff against Universal C. I. T. Credit Corporation in the principal sum of $1,400, and there was further judgment dismissing plaintiff's suit as against the defendant, Andress-Hanna, Inc. From this judgment defendant, Universal C. I. T. Credit Corporation, appealed to the Honorable th,e Supreme Court of the State of Louisiana. Plaintiff answered the appeal, praying an increase in the judgment to the sum of $16,-801.37, as originally prayed. The Supreme Court ordered the appeal transferred to this court, Levy v. Andress-Hanna, Inc., 232 La. 562, 94 So.2d 668.
There being no appeal from the judgment dismissing plaintiff’s demands as against Andress-Hanna, Inc., the issue on this appeal is now limited to the rights of plaintiff, Levy, against the defendant, Universal C. I. T. Credit Corporation.
On or about November 2, 1953, plaintiff purchased a 1953 model Mercury Coupe from Andress-Hanna, Inc. for the sum of $4,105.89, against which amount plaintiff was allowed a credit of $881.49, representing the trade-in allowance on his 1947 For-dor Ford Sedan, and a further credit of $150 paid in cash. The balance of the purchase price, which included interest, costs of financing and insurance, was represented by plaintiff’s note in favor of Universal C. I. T. Credit Corporation in the full sum of $3,-074.40, payable in monthly installments' of *375 $102.48, due on the 15th day of each month. Plaintiff made six monthly payments but, at the time of the incident hereinafter related, he was in arrears in his payments, having defaulted on the payment due June 15, 1954, and if defendant’s version of the occurrence is correct, being further in default with reference to the payment due July 15, 1954.
Almost every incident of fact relevant to a consideration of the case before us is hopelessly disputed. Plaintiff alleged and testified that at about 8:30 P. M. on July 14, 1954, three “very large and husky men”, representatives of the defendant, Universal C. I. T. Credit Corporation, called at his apartment, No. 215 in the Town House Apartment Building in the City of Shreveport, and made demand upon him that he either pay the past due installment, or installments, upon his automobile note or surrender possession thereof. Plaintiff further contends that the demeanor and action of defendant’s representatives, consisting of “physical force, violence and '.(threat of bodily injury and harm to your petitioner”, caused him to be placed in fear of his personal safety, further resulted in public embarrassment, humiliation and loss ■of wages, for which he claims to have been damaged in the sum above set forth. Plaintiff’s testimony, corroborated by that of his brother, Walter Levy, was that, after the three representatives of defendant appeared at his apartment door and made their demand, he requested them to await Rim in the lobby of the apartment building; that he thereupon repaired to Apartment No. 304, located on the third floor of the same building, occupied by his mother and .father, at which time his brother, Walter, who also lives in the Town House in Apartment No. 307, was visiting their parents; that he and his brother, Walter, then proceeded to the lobby of the Town House, ■where they met the three representatives of defendant corporation, Hileman, Phillips •and Stafford, where an argument ensued; ■that because of the presence of other ■people in the lobby plaintiff and his brother suggested that they move out to the sidewalk in front of the building to continue the discussion; that on the sidewalk the argument became more heated and again plaintiff and his brother suggested that they move to their business address on Marshall Street, where they were associated with their father in the operation of the Green-Back Trading Stamp Company; that the argument was continued at the latter location, and, after considerable heated discussion, plaintiff, under compulsion, surrendered his key to the automobile which was removed by defendant’s representatives to the Hodges Automobile Storage establishment, from which it was taken the next day to the lot of Andress-Hanna, Inc.; that before the car was moved plaintiff and his brother, assisted by Hileman and Phillips, removed personal and business possessions from the automobile; that some twelve days following the occurrence the automobile was sold by Andress-Hanna, Inc.
Almost every one of the above narrated facts is seriously contradicted by the testimony of the three named representatives of defendant. Fortunately for the determination of the issues presented, we do not think that the disputed questions of fact are controlling as to the conclusion. It is not particularly material whether there was one payment in default, as contended by plaintiff, or two, as contended by the agents of defendant; whether the incident in question occurred on July 14th, the day before the July installment was due, as contended by plaintiff, or on July 16th, the day after the installment was due, as contended by representatives of defendant. Nor do we think it is important whether all three of defendant’s representatives called at plaintiff’s apartment, as plaintiff testified, or whether only two of them took this action, as testified by defendant’s representatives.
Despite the above and other disagreements and controversies between the respective witnesses for plaintiff and de *376 fendant we think the record serves to preponderantly establish the facts essential to a determination of plaintiff’s rights. It was conclusively established that the incident took place at night; that the demand was made at plaintiff’s residence; that a heated discussion ensued between plaintiff and his brother on one hand and the three representatives of defendant on the other, which discussions were accompanied by intemperate conduct and language; that while only one of the representatives of defendant had been charged with the responsibility of servicing plaintiff’s account, the actions were undertaken in concert between the three employees of defendant, one of whom was six feet five inches in height and weighed 250 pounds, another approximately six feet one inch in height, weighing about 220 pounds, and the third five feet eight inches in height and weighing 150 pounds. The testimony in the record further establishes the fact that defendant’s representatives demanded either the money or the automobile and that the only alternative which they suggested was in the nature of a threat that, if they did not procure either the money or possession of the car, it would be necessary to take action for the seizure of the automobile through the sheriff’s office, which action would be accompanied by newspaper publicity, the clear implication being that this would adversely affect plaintiff’s business relations and general public standing.
We are constrained, under the established facts, to hold that the actions of defendant’s representatives were ill-advised, intemperate and illegal. The fact that plaintiff’s account had been thoroughly unsatisfactory, that fit had caused an excessive amount of inconvenience by reason of his repeated delays in meeting the monthly installment payments on his note, cannot be considered, in any sense, as justification for the established illegal and unwarranted procedure of defendant’s agents, in accordance with their instructions, in repossessing the automobile involved without resort to judicial process and without the voluntary consent of plaintiff. On the latter point we are firm in the belief that nothing in plaintiff’s actions, even accepting in full credence the testimony of defendant’s representatives on this point, could reasonably be construed as a voluntary surrender of possession. It must, in all reason, be considered that the actions of defendant’s employees in descending, in force, upon plaintiff’s place of residence at night, and after ordinary business hours, constituted circumstances which were calculated to instill at least a minimum of fear in plaintiff’s mind. Indeed, the circumstances were such that they might very well have constituted a basis for an award of substantial damages, by reason of humiliation and embarrassment, and they fail to justify such an award only because we do not regard the proof adduced on behalf of plaintiff as being sufficient in this respect.
The facts in the instant case are amazingly analogous to those which we have only recently considered in the case of Price v. General Motors Acceptance Corporation, 95 So.2d 834, to which we refer in support of our conclusions in the instant case on both the facts and the law. We reiterate the observation which we made in the Price case to the effect that repossession activities, without resort to legal process and without voluntary acquiescence on the part of the debtor, are giving rise to a constantly increasing number of actions for damages on the part of the injured debtor. It follows that creditors should enjoin upon their representatives the necessity for a greater regard for the rights of a delinquent debtor and should insist upon a meticulous regard for the provisions of law which are violated by intemperate, ill-considered and unwise zeal for collection of delinquent accounts.
It may be urged that there is one obvious difference in the factual circumstances between the Price case, cited supra, and the instant matter in that the defendant in the Price case, disposed of plaintiff’s automobile the day following its illegal repossession, whereas in the instant case plain *377 tiff’s automobile was not resold until after the lapse of a period of twelve days following its illegal repossession. To our minds, this is a distinction without a difference since the period of time is not the controlling element, but, rather, plaintiff’s rights must be based upon the phrase which we have above used, “illegal repossession”.
One other factual circumstance which was established on the trial of this case was that defendant removed the repossessed vehicle from a storage garage to the premises of the Andress-Hanna Company on the day following the repossession and that the car remained on such premises until it was disposed of by Andress-Hanna through resale. It was further shown that Andress-Hanna represented the car as having been judicially repossessed. The fact that the defendant, now before the court on this appeal, did not call upon Andress-Hanna, Inc. as endorser for payment of the note until twelve days, more or less, after repossession, has no significance nor material bearing upon the issue as to the manner or nature whereby the repossession was effected.
We are in full accord with the finding of the district court that the repossession was wrongfully and illegally effected without the voluntary consent of plaintiff, and it follows that plaintiff is entitled to damages. By stipulation of counsel it was agreed that the value of plaintiff’s interest in the repossessed vehicle, in the event of an award in his favor, should be fixed at $1,250. Additionally, the district judge allowed the sum of $150 in the nature of damages for humiliation and embarrassment. It is a close question as to whether this allowance should be substantially increased, but we think plaintiff’s proof on this point leaves much to be desired in the way of certainty and we therefore concluded that the evidence is insufficient to justify an increase in the amount awarded.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.